# United States District Court

EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | Case Number: 4:93-CR-22(01) |
| v. | § | Case Number: 4:93-CR-47(01) |
| | § | Judge Mazzant |
| WILLIAM SAMUEL MCLEAN, JR. | § | |

## <u>MEMORANDUM OPINION & ORDER</u>

Defendant William McLean, Jr. filed the following:

(1) Defendant's Motions for Reconsideration Pursuant to Federal Rule of Civil Procedure 59(e) (No. 4:93-cr-22, Dkt. #145; No. 4:93-cr-47, Dkt. #125);

(2) Defendant's Motions "to Have the United States Attorney's Office File a Fed. R. of Crim. P. Rule 48(a) to Remove the 2nd 924(c) in the Interest of Justice or to Show Cause Why it Should Not File Such a Motion" (No. 4:93-cr-22, Dkt. #146, No. 4:93-cr-47, Dkt. #126);

(3) Defendant's Motions to Take Notice of the Serving of, "Writ of Mandamus and Mandamus to Compel Recusal" (No. 4:93-cr-22, Dkt. #147; No. 4:93-cr-47, Dkt. #127);

(4) Defendant's Motions to Supplement (No. 4:93-cr-22, Dkt. #148; No. 4:93-cr-47, Dkt. #128); and

(5) Defendant's Motions for Reconsideration (No. 4:93-cr-22, Dkt. #150; No. 4:93-cr-47, Dkt. #129).

Having reviewed the motions and relevant pleadings, the Court finds the motions for reconsideration should be **GRANTED in part and DENIED in part**. The Court will reconsider its prior rulings to the extent it will consider whether the sentencing factors set forth in 18 U.S.C. § 3553(a) support Defendant's release. In addition, the Court finds the motions to supplement should be **GRANTED**. However, the remaining motions should be **DENIED.**

## I.  BACKGROUND

### A.  Case No. 4:93-CR-22(01)

On July 15, 1993, Defendant William Samuel McLean Jr. ("McLean") pleaded guilty to two instances of using and carrying a firearm during and in relation to crimes of violence—the crimes of violence being interference of commerce by robbery with threats or violence, in violation of 18 U.S.C. § 1951(a) ("Hobbs Act")—in violation of 21 U.S.C. § 924(c).

The statutory sentence for the first Section 924(c) offense was five years' imprisonment, and the statutory sentence for the second Section 924(c) offense was twenty years' imprisonment. The twenty-year term was required to be served consecutively to the five-year term.  Thus, the Court sentenced McLean to 60 months' imprisonment for the first 924(c) violation and 240 months' imprisonment for the second 924(c) violation, to be served consecutively.

### B.  Case No. 4:93-CR-47(01)

On August 19, 1993, McLean pleaded guilty to four instances of interference of commerce by robbery with threats or violence, in violation of the Hobbs Act.  The Court sentenced McLean to 235 months' imprisonment, to be served consecutively with the sentence he received in No. 4:93-CR-22.  McLean appealed, and the Fifth Circuit affirmed.  *United States v. McLean*, 30 F.3d 1494 (5th Cir. 1994) (unpublished).

### C.  Motions for Early Release

McLean was serving his sentence at Hazelton FCI, but has since been transferred to FCI Cumberland.  *See* https://www.bop.gov/inmateloc/ (Register Number: 04259-078).  The Bureau of Prisons ("BOP") currently projects McLean's release date to be May 25, 2031.  *Id.*

On April 26, 2018, McLean filed a motion seeking early release in both of his criminal cases based on the Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) (No.

4:93-cr-22, Dkt. #62; No. 4:93-cr-47, Dkt. #54).  The Government opposed the motions (No. 4:93-cr-22, Dkt. #63; No. 4:93-cr-47, Dkt. #55).  The Court denied McLean's motions (No. 4:93-cr-22, Dkt. #64; No. 4:93-cr-47, Dkt. #56).

On September 14, 2020, McLean requested compassionate release, relying in part on the ongoing COVID-19 pandemic, and also pointing to the First Step Act's amendment to 18 U.S.C. § 924(c) (No. 4:93-cr-22, Dkt. #92; No. 4:93-cr-47, Dkt. #78).  The Government opposed the motions (No. 4:93-cr-22, Dkt. #98; No. 4:93-cr-47, Dkt. #82).  On December 11, 2020, the Court denied the motions for lack of jurisdiction (No. 4:93-cr-22, Dkt. #108; No. 4:93-cr-47, Dkt. #113).  In both instances, the Court determined McLean failed to meet Section 3582(c)(1)(A)'s exhaustion requirement because his request to the warden for early release did not include a viable release plan.

McLean appealed the Orders to the Fifth Circuit Court of Appeals and moved for the appointment of counsel (No. 4:93-cr-22, Dkt. #111; No. 4:93-cr-47, Dkt. #93).  The Fifth Circuit denied the motion for counsel (No. 4:93-cr-22, Dkt. #132; No. 4:93-cr-47, Dkt. #113).  As for the compassionate release, on January 27, 2022, the Fifth Circuit stated the Court abused its discretion in denying McLean's request for failure to exhaust his administrative remedies (No. 4:93-cr-22, Dkt. #139; No. 4:93-cr-47, Dkt. #119).  Accordingly, the Fifth Circuit vacated this Court's order denying McLean compassionate release and remanded for further proceedings (the "Mandate").[1]

On June 17, 2021, McLean again moved for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (No. 4:93-cr-22, Dkt. #137, No. 4:93-cr-47, Dkt. #117).  On October 25, 2021, McLean filed "Motion Ex Parte for U.S. Judge Amos L. Mazzant," urging the Court to resolve his

---

[1] In the motions the Court previously denied, McLean cited underlying health concerns combined with the COVID-19 pandemic as "extraordinary and compelling circumstances" (No. 4:93-cr-47, Dkt. #78; No. 4:93-cr-22, Dkt. #92).  He makes the same arguments in his later-filed motions.  Thus, by deciding the later-filed motions for compassionate release, the Court also addresses the merits of the motion McLean successfully appealed.

motions for compassionate release (No. 4:93-cr-22, Dkt. #138; No. 4:93-cr-47, Dkt. #118).   On February 17, 2022, Mclean filed motions asking the Court to take judicial notice of the Mandate (No. 4:93-cr-22, Dkt. #140; No. 4:93-cr-47, Dkt. #120).   On February 28, 2022, McLean again moved for compassionate release (No. 4:93-cr-22, Dkt. #142; No. 4:93-cr-47, Dkt. #122).   The Government did not respond.   On March 18, 2022, the Court denied McLean's motions for compassionate release because extraordinary and compelling reasons did not exist that would warrant a reduction of his sentence (No. 4:93-cr-22, Dkt. #143; No. 4:93-cr-47, Dkt. #123).

### D.  Mandamus and Current Motions

On April 6, 2022, McLean moved for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) (No. 4:93-cr-22, Dkt. #145; No. 4:93-cr-47, Dkt. #125).   The same day, Mclean also moved "to Have the United States Attorney's Office File a Fed. R. of Crim. P Rule 48(a) to Remove the 2nd 924(c) in the Interest of Justice or to Show Cause Why it Should Not File Such a Motion" (No. 4:93-cr-22, Dkt. #146, No. 4:93-cr-47, Dkt. #126).

On May 16, 2022, McLean filed with the Court a notice of the "Writ of Mandamus and Mandamus to Compel Recusal" (No. 4:93-cr-22, Dkt. #147; No. 4:93-cr-47, Dkt. #127).   On June 1, 2022, McLean moved to supplement his original motions for reconsideration (No. 4:93-cr-22, Dkt. #148; No. 4:93-cr-47, Dkt. #128).   On June 9, 2022, the Court received notice from the Fifth Circuit of McLean's filing a Petition for Writ of Mandamus (No. 4:93-cr-22, Dkt. #150).

On June 13, 2022, McLean moved again for reconsideration (No. 4:93-cr-22, Dkt. #149; No. 4:93-cr-47, Dkt. #129) of the Court's Order that "extraordinary and compelling" reasons did not exist that would justify McLean's early release (No. 4:93-cr-22, Dkt. #143; No. 4:93-cr-47, Dkt. #123).

## II.  LEGAL STANDARD

A judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c).  One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A), the statute authorizing compassionate release.  Under § 3582(c)(1)(A), a district court may grant a sentence reduction if it finds: (1) a defendant "fully exhausted all administrative rights"; (2) "extraordinary and compelling reasons warrant such a reduction"; (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (4) such a reduction is appropriate "after considering the factors set forth in § 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The First Step Act of 2018 made the first major changes to compassionate release since its authorization in 1984. Pub. L. 115-391, 132 Stat. 5194.  Procedurally, the First Step Act removed the Director of the BOP as the sole arbiter of compassionate release.  Instead, the law enabled a defendant to move for compassionate release directly in district court after exhausting their administrative rights. 18 U.S.C. § 3582(c)(1)(A).  Prior to this change, the BOP retained sole gatekeeping authority over compassionate release petitions.  *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020).  This resulted in underuse and mismanagement.[2]  *Id.*  Through the First Step Act, Congress sought to mitigate this by "increasing the use and transparency of compassionate release" Pub. L. 115-391, 132 Stat. 5194, 5239 (capitalization omitted).

---

[2] In 2013, a report from the Office of the Inspector General revealed that the BOP granted compassionate release to only an average of 24 incarcerated people per year. *See* U.S. Dep't of Just. Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* 1 (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf (last visited April 14, 2020).  And of the 208 people whose release requests were approved by both a warden and a BOP Regional Director, 13% died awaiting a final decision by the BOP Director.  *Id.*; *see also Extraordinary and Compelling: A Re-Examination of the Justifications for Compassionate Release*, 68 MD. L. REV. 850, 868 (2009) (noting that, in the 1990s, 0.01 percent of inmates annually were granted compassionate release).

Substantively, the First Step Act also modified the "extraordinary and compelling reasons" determination.  Congress never defined what constitutes "extraordinary and compelling," but rather delegated this determination to the Sentencing Commission.[3]  By the text of § 3582(c)(1)(A), any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."  However, since passage of the First Step Act, the Sentencing Commission has not updated its guidelines on compassionate release.[4]  This has created significant disagreement across the country whether the pre-First Step Act policy statement is still "applicable," and thus binding on district courts.

The Fifth Circuit recently joined the Second, Fourth, Sixth, Seventh, and Tenth Circuits in concluding that § 1B1.13 is no longer binding on a district court.  *See United States v. Shkambi*, 2021 WL 1291609, at *4 (5th Cir. 2021) ("The district court on remand is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a).  In reaching this conclusion, we align with every circuit court to have addressed the issue.").  Under this new framework, § 1B1.13 still binds district courts on motions made by the BOP, but, for motions made directly by an inmate, district courts are free to consider any relevant fact in determining if "extraordinary and compelling reasons" exist.  *See Brooker*, 976 F.3d at 235–36 (because the First Step Act allows both inmates and the BOP to file compassionate-release motions under § 3582(c)(1)(A), § 1B1.13 now applies only when such motions are made by the BOP and is inapplicable when a compassionate-release motion is made by a defendant); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) ("A sentence reduction brought about by motion of a defendant, rather than

---

[3] In 28 U.S.C. § 994(a)(2), Congress granted the Commission broad authority to promulgate "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in [18 U.S.C. § 3553(a)(2)]."  And in 28 U.S.C. § 994(t), "Congress instructed the Commission to 'describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.'" *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (quoting 28 U.S.C. § 994(t)).

[4] The Sentencing Commission currently lacks a quorum to issue new guidelines.

the BOP, is not a reduction 'under this policy statement.'"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with *Brooker* and holding that there is no "applicable" policy statement for § 3582(c)(1)(A) motions after the First Step Act); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release").

Despite this newfound discretion, district courts are not without guidance in determining whether "extraordinary and compelling reasons" exist.  First, Congress has explicitly limited that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason. 28 U.S.C. § 994(t) (emphasis added).   Second, the Sentencing Commission's policy statement and commentary is still persuasive. *United States v. Logan*, No. 97-CR-0099(3), 2021 WL 1221481 (D. Minn., Apr. 1, 2021) (finding that § 1B1.13's definition of "extraordinary and compelling" should be afforded "substantial deference . . . as such deference is consistent with the intent (even if not mandated by the letter) of § 3582(c)(1)(A)").  Application Note 1 of the policy statement provides that "extraordinary and compelling reasons" exist when: (1) a terminal illness or other medical condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility"; (2) a defendant, who is at least 65 years old, "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment"; and (3) a defendant has minor children without a caregiver or with an incapacitated spouse or partner who needs the defendant to be the caregiver.   U.S.S.G. § 1B1.13, n.1(A)-(C).  Lastly, BOP Program Statement 5050.50 ("PS 5050.50"), amended after passage of the First Step Act, describes the factors BOP considers grounds for compassionate release.  *See* PS 5050.50 ¶¶ 3–6.  These

grounds are similar to the reasons identified by the Sentencing Commission, but also include a list of factors like rehabilitation and circumstances of the offense.[5] *Id.*

Building from this guidance, district courts across the country have identified additional situations where "extraordinary and compelling reasons" exist.  First, while rehabilitation alone is not an "extraordinary and compelling" reason for a sentence reduction, it can be a significant factor warranting a sentence reduction when an inmate has an otherwise qualifying condition.[6] *S ee United States v. Rodriguez*, 451 F.Supp.3d 392, 405 (E.D. Pa. 2020) (noting that the Sentencing Commission itself interpreted § 3582(c)(1)(A) as allowing consideration of an inmate's rehabilitation).  If an inmate demonstrates a long, comprehensive record of rehabilitation, it goes to whether injustice would result if they remain incarcerated. *See Brooker*, 976 F.3d at 238 (identifying "the injustice of [a] lengthy sentence" as a factor that may weigh in favor of a sentence reduction).  Second, courts consider any changes in law and the sentencing guidelines when determining if a sentence is extraordinary.  For example, courts grant compassionate release at a remarkable rate for inmates subject to the now abolished § 924(c) sentence-stacking. *See McCoy*, 981 F.3d at 285 ("[M]ultiple district courts have concluded that the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an "extraordinary and compelling" reason for relief under § 3582(c)(1)(A)").  Though Congress did not retroactively eliminate § 924(c) sentence-stacking,

---

[5] PS 5050.50's nonexclusive factors are: "the defendant's criminal and personal history, nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'"  *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting PS 5050.50 ¶ 7).
[6] 18 U.S.C. § 3142(g) aids the Court in determining whether a defendant is a danger to the community.  Applicable factors include: "the nature and circumstances of the offense," "the person's character, physical and mental condition, family ties, employment, . . . criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

courts consider whether the outdated policy warrants relief on a case-by-case basis.[7]

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A).  These factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .

(5) any pertinent [Sentencing Commission] policy statement . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

### III. DISCUSSION

McLean moves for a reduction of his sentence due to changes in federal laws and sentencing guidelines, specifically the now abolished Section 924(c) sentence-stacking provisions (No. 4:93-cr-22, Dkts. #137, 138; No. 4:93-cr-47, Dkts. #117, 118).[8]  McLean's more recent

---

[7] *See* Shon Hopwood, *Second Looks & Second Chances*, 41 CARDOZO L. REV. 83, 123–24 (2019) (arguing Congress did not make § 924(c) sentence stacking retroactive because it did not want to make all inmates "*categorically*" eligible for sentencing relief, but Congress meant for relief from draconian sentences to apply "*individually*").

[8] Because all four motions are identical, the Court's analysis is the same for each.

motions also seek compassionate release based on health concerns and his medical treatment (No. 4:93-cr-22, Dkt. #142; No. 4:93-cr-47, Dkt. #122).[9]  The Government has not responded to any of McLean's motions.

McLean has met § 3582(c)(1)(A)'s exhaustion requirement, however, he has not met the statute's requirement that "extraordinary and compelling reasons" exist warranting a reduction of his sentence.  McLean's motions, therefore, must be denied.

## A.  McLean Has Met Section 3582(c)(1)(A)'s Exhaustion Requirement.

The Court may only consider McLean's motion for compassionate if he first meets § 3582(c)(1)(A)'s exhaustion requirement.  Courts may not consider a modification to a defendant's sentence under § 3582(c)(1)(A)(i) unless a motion for such a modification is properly made by the Director of the BOP or by a defendant who has fully exhausted their administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Fully exhausting administrative remedies requires a denial by the warden of a defendant's facility or waiting thirty days without receiving a response to a request, whichever is earlier.[10]  *Id.*

Section 3582(c)(1)(A)'s exhaustion requirement is not waivable.  *See United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule . . ."); *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020) ("While the Court is well aware of the effects the COVID-19 pandemic . . . § 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse

---

[9]  Again, because the motions are identical, and so the Court's analysis is the same for each.
[10]  BOP regulations define "warden" to include "the chief executive officer of . . . any federal penal or correctional institution or facility."  28 C.F.R. § 500.1(a); *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020); *c.f. United States v. Campagna*, 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (holding that "the denial of Defendant's request by the Residential Re-entry Manager suffices to exhaust his administrative rights").

Reeves' failure to exhaust his administrative remedies or to waive the 30-day waiting period."). If a defendant has not sought relief from the BOP, or has not waited thirty days since seeking relief, the Court may not consider their motion.

McLean submitted requests for compassionate release to Warden Adams, citing his medical conditions, on three different occasions: February 10, 2020, June 12, 2020, and December 29, 2020. The warden denied all of McLean's requests. On May 10, 2021, McLean submitted a request to the warden at Hazelton FCI to grant him compassionate release (No. 4:93-cr-22, Dkt. #137; No. 4:93-cr-47, Dkt. #117, Exhibit A). The warden did not respond (No. 4:93-cr-22, Dkt. #137 at p. 6; No. 4:93-cr-47, Dkt. #117 at p. 6). Thus, McLean has met § 3582(c)(1)(A)'s exhaustion requirement. However, McLean's motions nevertheless fail because he has not established "extraordinary and compelling" reasons for early release—regardless of whether he has presented the Court with a viable release plan.

## B. McLean Has Not Met Section 3582(c)(1)(A)'s Requirement that "Extraordinary and Compelling Reasons" Warrant a Sentence Reduction.

McLean's compassionate release motions turn on (1) his assertion that the abolishment of Section 924(c)'s sentence-stacking constitutes an extraordinary and compelling reason to reduce his sentence, and (2) his assertion that he meets "the medical criteria" for compassionate release.

### 1. Sentence-Stacking

Under the First Step Act of 2018, Congress amended § 924(c)(1)(C) to clarify that the consecutive mandatory minimum sentence of 25 years only applies when a defendant commits a subsequent § 924(c) violation after a prior § 924(c) conviction has become final. *See United States v. Cooper*, 996 F.3d 283 (5th Cir. 2021). "In other words, the 25-year repeat offender minimum no longer applies where a defendant is charged simultaneously with multiple § 924(c)(1) offenses. Now, to trigger the 25-year minimum, the defendant must have been convicted of a § 924(c)(1)

offense in a prior, separate prosecution." *United States v. Gomez*, 960 F.3d 173, 176–77 (5th Cir. 2020).

McLean was convicted of two counts of using and carrying a firearm during and in relation to crimes of violence, in violation of Section 924(c).  The statutory sentence for the first Section 924(c) offense was five years' imprisonment, and the statutory sentence for the second Section 924(c) offense was twenty years' imprisonment. The twenty-year term was required to be served consecutively to the five-year term.  Under the amended version of § 924(c), however, the 25-year minimum would not have been triggered.  *Gomez*, 960 F.3d at 176–77.

But the First Step Act did not apply the 2018 change to § 924(c) retroactively to sentences imposed prior to its enactment.  *See* § 403(b), 132 Stat. at 5222; *McCoy*, 981 F.3d at 271.  "Had Congress made the changes retroactively applicable to all, every defendant sentenced to stacked § 924(c) offenses would have been categorically eligible for sentencing relief."  SHON HOPWOOD, *Second Looks & Second Chances*, 41 CARDOZO L. REV. 83, 110 (2019).  On the other hand, defendants seeking compassionate release who were sentenced under § 924(c), "must establish extraordinary and compelling reasons individually in order to be eligible for relief."  *Id.*

Several district courts have been receptive to McLean's argument.  *United States v. Owen*, No. 97-CR-2546-CAB, 2020 U.S. Dist. LEXIS 61460, at *7–8 (S.D. Cal. Mar. 20, 2020) (collecting cases).  In evaluating whether the changes to stacking provisions constitute "extraordinary and compelling reasons" warranting early release in an individual defendant's case, courts often consider the length of the original sentence, and the "gross disparity" between the original sentence and the new sentences Congress has deemed appropriate for the same offense. *McCoy*, 981 F.3d at 285–86 (citing *United States v. Redd*, 444 F. Supp. 3d 717, 723–24 (E.D. Va. 2020)); *see also United States v. Bryant*, No. 95-202-CCB-3, 2020 WL 2085471, at *5 (D. Md.

-12-

Apr. 30, 2020) (noting thirty-year disparity).

Additionally, courts granting compassionate release based on sentence-stacking changes tend to focus on the defendant's young age at the time of sentencing.  *See e.g., Id.* at 278 ("[Defendant] was a teenager with no relevant criminal history at the time of his offenses, making the recidivist penalties of "stacked" sentences particularly inappropriate."); *United States v. Zullo*, 976 F.3d 228, 238 (2d Cir. 2020) ("Zullo's age at the time of his crime and the sentencing court's statements about the injustice of his lengthy sentence might perhaps weigh in favor of a sentence reduction."); *United States v. Fowler*, No. 4:92-CR-177-Y, 2021 U.S. Dist. LEXIS 80058, at *4 (N.D. Tex. Feb. 24, 2021) ("[T]he Court is mindful of the fact that at the time Fowler's offenses herein were committed, he was only twenty-five years old.").  Courts tend to disfavor a long sentence imposed at a young age, resulting in a defendant spending the majority of his or her life in prison.  *Cf. United States v. Jones*, F. Supp. 3d 969, 979 (N.D. Cal. 2020) ("[B]ecause [Defendant] was only 22 years old when he began serving his sentence, he has spent more than half his life in prison.  Under these conditions, [Defendant's] continued incarceration is unjust.").

In evaluating McLean's age at the time of his sentencing, criminal history, and disparity in sentencings, the Court does not find "extraordinary and compelling reasons" exist that warrant a reduction in McLean's sentence.

First, at the time of his sentencing, McLean was thirty-three years old (No. 4:93-cr-22, Dkt. #53; No. 4:93-cr-47, Dkt. #32).  In other cases where district courts have granted compassionate release, the defendants were no older than twenty-five years old at the time of their respective sentencings.  *See McCoy*, 981 F.3d at 278 (teenager); *Fowler*, 2021 U.S. Dist. LEXIS 80058, at *4 (25 years old); *Bryant*, 2020 WL 2085471, at *4 (22 and 24 years old); *Zullo*, 976 F.3d at 238 (teenager); *United States v. Scott*, No. 95-202-CCB-2, 2020 WL 2467425, at *4 (D.

Md. May 13, 2020) (23 years old).  McLean's age of 33 at the time of his sentencing does not support his request.

Second, McLean's criminal history is also comprised of the Hobbs Act robberies.  In the Fifth Circuit, a Hobbs Act robbery qualifies as a crime of violence for purposes of § 924(c).  *United States v. Buck*, 847 F.3d 267, 274 (5th Cir. 2017) (holding that it was not erroneous for the district court to classify a Hobbs Act robbery as a crime of violence under § 924(c)).  The Hobbs Act defines "robbery" as the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property.  18 U.S.C. § 1951(b)(1).

That said, on June 21, 2022, the Supreme Court held that an attempted Hobbs Act robbery does not qualify as a crime of violence.  *United States v. Taylor*, __ U.S. __, 2022 WL 220334, at \*1 (2022).  The Hobbs Act makes it a federal crime to commit, attempt to commit, or conspire to commit a robbery with an interstate component. §1951(a). Section 924(c) authorizes enhanced punishments for those who use a firearm in connection with a "crime of violence" as defined in either §924(c)(3)(A)—known as the elements clause—or §924(c)(3)(B)—known as the residual clause.  According to § 924(c)(3), a crime of violence is an offense that is a felony and either (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.  18 U.S.C. § 924(c)(3)(A–B).  However, the Supreme Court recently held that §924(c)(3)(B)'s residual clause was unconstitutionally vague.  *United States* v. *Davis*, 588 U. S. ___, 204 L. Ed. 2d 757, 764 (2019).  Then, in *Taylor*, the Supreme Court held that because no element of Attempted Hobbs Act Robbery requires proof that the defendant used, attempted to use, or

-14-

threatened to use force—as required by the elements clause—it could not qualify as a crime of violence.  2022 WL 220334, at *2.

Notably though, McLean was not convicted of an attempted Hobbs Act robbery.  Rather, McLean was charged and convicted for two instances of interference of commerce by robbery with threats of violence.  McLean was therefore convicted of a crime that satisfies the elements clause— unlike the defendant in *United States v. Taylor*.  Thus, McLean's criminal history weakens his argument for release.

Furthermore, McLean's prison record does not set the Court at ease about the state of his rehabilitation.  McLean has continued to participate in violent conduct while in confinement.  BOP records indicate that he was sanctioned for assaulting another inmate on September 12, 2015 (No. 4:93-cr-22, Dkt. #82, Exhibit A at p. 10).  The records also show that McLean is considered to be at a high-risk recidivism level (No. 4:93-cr-22, Dkt. #82, Exhibit A at p. 1).

Finally, and most importantly, the Court considers the length of McLean's original sentence, and how it compares to current sentencing laws and guidelines.  In 1993, the Court sentenced McLean to 60 months' imprisonment for his first Section 924(c) violation and 240 months' imprisonment for his second 924(c) violation, to be served consecutively.  A month later, the Court sentenced McLean to 235 months' imprisonment for Hobbs Act robberies, to be served consecutively with the sentence previously rendered.  McLean, therefore, was sentenced to 535 consecutive months'—or roughly 45 years'—imprisonment.  Under current law, McLean would be sentenced to a total of 10 years' imprisonment for his two 924(c) violations in 4:93-CR-22(01). Thus, in addition to the 235 months' imprisonment for the Hobbs Act robberies, McLean's sentence would be for 355 months, or roughly 30 years in prison.

A difference of fifteen years gives the Court pause.  However, the Court does not find such

a disparity in sentencings rises to the level of "extraordinary and compelling reasons" that would warrant release.  Other courts who have granted reduced sentences evaluated cases in which the disparity in the defendant's original sentencing and the one that would be imposed currently was thirty years or more.  *See McCoy*, 981 F.3d at 285 ("Today, with sentence-stacking eliminated, each would have been sentenced under § 924(c) not to 45 years, but to 15[.]"); *Redd*, 444 F. Supp. 3d at 723 (finding defendant's sentence, which was a result of stacking, "resulted in a mandatory minimum sentence of 540 months for his three § 924(c) convictions, to run consecutive to his 63 month sentence for the bank robberies. . . . [T]hat sentence is 30 years, or three times longer, than what Congress has now deemed an adequate punishment for comparable § 924(c) conduct"); *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md. 2020) ("Accordingly, if Decator were sentenced today, his three § 924(c) convictions would result in a consecutive sentence of 15 rather than 45 years."); *Bryant*, 2020 WL 2085471, at *3 ("If Bryant were sentenced today, his three § 924(c) convictions would result in a sentence enhancement of 15 rather than 45 years."); *Scott*, 2020 WL 2467425, at *3 ("Accordingly, if Scott were sentenced today, his three § 924(c) convictions would result in a sentence enhancement of 15 rather than 45 years.").  Such a gross disparity does not exist in this case.

## 2. Medical Conditions

The Court has discretion to decide whether McLean's conditions present "extraordinary and compelling reasons" warranting a sentence reduction.  *See Shkambi*, 2021 WL 1291609, at *4. The Court is not bound by the Sentencing Commission's policy statement and may consider any relevant facts in evaluating McLean's condition of incarceration.  *Id.*  Typically, courts consider whether a defendant suffers from a serious health condition, has a record of rehabilitation, the nature and circumstances of defendant's offense, and whether a sentence is based on outdated law.

-16-

*See Brooker*, 976 F.3d at 238.

When considering if a defendant's health condition supports compassionate release, the mere existence of COVID-19 in society cannot independently justify a sentence reduction. *See United States v. Miller*, No. 2:17-CR-015-D, 2020 WL 2514887, *2 (N.D. Tex. May 15, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). For a defendant to be granted compassionate release based on COVID-19, defendant must have a serious comorbidity and evidence the facility is not effectively controlling the spread of the virus. *See United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence.").

In the instant case, McLean's health conditions do not warrant compassionate release. McLean suffers from hypertension, epilepsy, incontinence, constipation, arthritis, basal cell carcinoma, and chronic obstructive pulmonary disease. McLean is not subject to a terminal illness. McLean has been able to provide self-care in prison. He is able to report to Health Services for incontinent undergarments and can change them independently. He has also been provided a wheelchair and crutches. Further, hypertension, diabetes mellitus, hyperlipidemia, coronary artery disease, acid reflux, dizziness, and a bladder tumor are insufficient to constitute "extraordinary and compelling reasons" alone unless combined with other extenuating circumstances. *See United States v. Manzano*, No. 16-cr-20593, 2020 WL 7223301, at *3–4 (E.D. Mich. Dec. 8, 2020) (collecting cases and finding hypertension and diabetes were "extraordinary and compelling" when combined with defendant's age and the lack of health protections implemented by her facility); *see also United States v. Guyton*, No. 11-271, 2020 WL 2128579, at *3 (E.D. La. May 5, 2020)

(denying compassionate release for a 45-year-old with mild hypertension).  McLean's age of 62 also does not support compassionate release.

Additionally, McLean received both doses of the Pfizer vaccine for COVID-19 in March of 2021.  On January 27, 2022, McLean received his booster vaccine.  McLean's vaccination status mitigates concerns over the risks associated with contracting COVID-19.  *See United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) ("absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)"); *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release to defendant with several chronic medical conditions when defendant had been fully vaccinated); *United States v. Wakefield*, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) (finding defendant who presented obesity, diabetes, and hypertension, had previously tested positive, but had received the first dose could not meet his burden of establishing that his COVID-19 risk was an "extraordinary and compelling reason").

Weighing the evidence, McLean fails to prove his continued incarceration is "extraordinary and compelling" under § 3582(c)(1)(A)(i)'s framework.  *See United States v. Stowe*, No. CR H-11-803(2), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019) (citation omitted) (stating that the defendant generally "has the burden to show circumstances meeting the test for compassionate release").

## C.  Section 3553(a) Does Not Support a Sentence Reduction

Even if McLean met § 3582(c)(1)(A)'s requirements, the Section 3553(a) factors do not support a reduction of McLean's sentence.

First, the Court considers the nature and circumstances of the offense and history and

-18-

characteristics of the Defendant.  McLean was convicted of four counts of Hobbs Act Robbery and two counts of carrying a firearm during and in relation to crimes of violence.

Second, the Court considers the need for the sentence to be imposed to reflect seriousness of the offense; promote respect for the law and punishment for the offense; to afford adequate deterrence; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  The Court finds that reducing McLean's sentence would undermine the seriousness of his offenses, respect for the law, and just punishment.  His sentence was necessary to provide adequate deterrence as well as protection of the public.  After McLean was released from prison in 1992—after serving his sentence for a robbery he committed in 1987—McLean was involved in numerous car thefts and robberies of supermarkets in various areas of the country. From the detailed criminal history in his PSRs, it appears McLean has been in near constant contact with the criminal justice system most of his adult life, and even as a juvenile (No. 4:93-cr-22, Dkt. #53; No. 4:93-cr-47, Dkt. #32).  This factor weighs against a sentence reduction.

Third, the Court looks to the kinds of sentences available to the Court.  McLean has served almost thirty years of his 45-year sentence which means that there is no other type of sentence available to Defendant other than a sentence reduction. Considering his offense conduct, this factor weighs against any reduction.

Fourth, the Court considers the kinds of sentence and range established for the applicable category of offense and the defendant. For the two instances of using and carrying a firearm during and in relation to crimes of violence, the PSR did not calculate a total offense level, but the recommended sentence was for twenty-five years (No. 4:93-cr-22, Dkt. #53).  For the four instances of interference of commerce by robbery or threats of violence, the PSR calculated a total

offense level of 33 (No. 4:93-cr-47, Dkt. #32).   The guideline range was 235–293 months. Considering McLean's range was higher than his actual sentence demonstrates that this factor also weighs against a sentence reduction.

Fifth, the Court considers any pertinent policy statement. In addition to the Court's finding that McLean's medical conditions do not qualify as extraordinary and compelling reasons, the Court also finds that the Defendant would pose a danger to society. Therefore, McLean fails to fully meet all requirements of the policy statement.

Sixth, the Court needs to consider the need to avoid unwarranted sentence disparities among defendants. McLean's sentence is below the Guideline range for his offense level and criminal history.  Further, the only other defendant in this case received a substantially similar sentence to McLean's.

Finally, the Court considered the need to provide restitution to any victims of the offense. Defendant was never ordered to pay restitution.  Thus, this factor does not weigh against reduction.

Although the Court agrees that McLean is not currently in the best health, the Court also recognizes that considering McLean's history there is reason to doubt McLean's claims. After consideration of the factors in 18 U.S.C. § 3553(a) and comparing McLean's claims about his medical condition against his medical records, a sentence reduction is not warranted.

*        *        *

Under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless one of a few "narrow exceptions" applies.  *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)) (plurality op.); *see also Dillon*, 560 U.S. at 819 (same).  Compassionate release is one of those exceptions, but a defendant must conform both to the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify a sentence.

Because McLean has failed to meet the controlling requirements for compassionate release set forth in § 3582(c)(1)(A)(i), his Motions must be denied.

On a final note, McLean moved the Court to take notice of his serving of "Writ of Mandamus and Mandamus to Compel Recusal" (No. 4:93-cr-22, Dkt. #147; No. 4:93-cr-47, Dkt. #127). First, McLean never filed a motion requesting the Court recuse itself. Second, there is no basis for the Court to recuse itself. Recusal is proper if the court determines that a reasonable person would perceive a significant risk that the judge will resolve the case on a basis other than the merits. *Sao Paulo State of Federative Republic of Braz. v. Am. Tobacco, Co.,* 535 U.S. 229, 232–33 (2002). Here, there is no appearance of partiality, much less the existence of *actual* partiality. *United States v. Jordan,* 49 F.3d 152, 155 (5th Cir. 1995). Third, McLean takes issue with—in his view— the Court's failure to follow the Mandate. However, the Court has followed the Mandate. On remand, the Court found McLean had clearly exhausted his administrative remedies, however, extraordinary and compelling reasons did not exist which would warrant his release. That said, the Court does take notice of the fact that McLean has filed a writ of mandamus.

### IV. CONCLUSION

It is therefore **ORDERED** Defendant's Motions for Reconsideration Pursuant to Federal Rule of Civil Procedure 59(e) (No. 4:93-cr-22, Dkt. ##145, 150; No. 4:93-cr-47, Dkts. ##125, 129) are hereby **GRANTED in part and DENIED in part**. The Court grants the motion for the limited purpose of considering whether the Section 3553(a) factors support Defendant's release.

It is further **ORDERED** Defendant's Motions "to Have the United States Attorney's Office File a Fed. R. of Crim. P. Rule 48(a) to Remove the 2nd 924(c) in the Interest of Justice or to Show Cause Why it Should Not File Such a Motion" (No. 4:93-cr-22, Dkt. #146, No. 4:93-cr-47, Dkt. #126) are hereby **DENIED**.

It is further **ORDERED** Defendant's Motions to Supplement (No. 4:93-cr-22, Dkt. #148; No. 4:93-cr-47, Dkt. #128) are hereby **GRANTED**.[11]

**IT IS SO ORDERED.**

**SIGNED this 27th day of June, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[11] McLean asks the Court to take notice of a heart attack he allegedly suffered in February of 2022.  The Court considered this in its analysis.  However, the circumstances of this alleged heart attack and recovery are unclear, and thus, do not change the Court's opinion.